UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| EVANSTON INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | Case No. 22-cv-1540 |
| ) | |
| vs. ) | |
| ) | |
| REMBRANDT ENTERPRISES, INC. ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Evanston Insurance Company ("Evanston"), by and through its undersigned attorneys, brings this Complaint for Declaratory Judgment and alleges as follows:

### Nature Of The Action

1. This is a Complaint for Declaratory Judgment relating to the parties' respective rights and obligations under a policy of insurance (the "Evanston Policy") that Evanston issued to Rembrandt Enterprises, Inc. ("Rembrandt").

2. Rembrandt has demanded that Evanston provide it with insurance coverage under the Evanston Policy with respect to a recent Avian Influenza outbreak that impacted its egg production operations at one of its egg production facilities (the "Outbreak")

3. Evanston disputes that it has any obligation to provide Evanston with insurance coverage under the Evanston Policy in connection with the Outbreak.

### Parties, Venue And Jurisdiction

4. Evanston is an Illinois corporation with its principal place of business in Illinois.

5. Upon information and belief, Rembrandt is an Iowa corporation with its principal place of business in Iowa.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2),

1

because Rembrandt transacts substantial business in this District, and the Policy covers Rembrandt locations and operations in this District (subject to its terms and conditions).

7. This Court has personal jurisdiction over Rembrandt, because it has facilities located in and transacts substantial business in the State of Minnesota.

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because Evanston and Rembrandt are citizens of different states and the amount in controversy exceeds $75,000.

9. This Court has jurisdiction to issue a declaratory judgment pursuant to Federal Rule 57 and 28 U.S.C. § 2201.

10. An actual, immediate and justiciable controversy exists among the parties regarding the existence and scope of insurance coverage under the Evanston Policy with respect to the Outbreak.

## The Evanston Policy And Pertinent Provisions

11. Evanston issued Environmental Policy number MKLV3ENV102165 to Rembrandt for the November 1, 2020 to November 1, 2023 policy period.

12. The Evanston Policy's Schedule of Covered Locations includes (among other locations) an egg production facility located at 1419 480th Avenue, Rembrandt, Iowa 50576 (the "Site").

13. Each of the potentially applicable coverages/insuring agreements requires the existence of a "pollution condition" to implicate coverage.  (*See* Policy (attached hereto as **Ex. A**) at pp. 2-5 of Site Pollution and Environmental Coverage Form).  The Policy defines "pollution condition" in pertinent part as "the discharge, dispersal, seepage, migration, release or escape of 'pollutants.'"  (*See id.* at p. 19-20).

14. The Policy incorporates two separate Endorsements with similar, but slightly different definitions of "pollutants." The Policy Changes Endorsement provides that (*see id.* at Policy Changes Endorsement – Pollutants):

> "Pollutants" means any solid, liquid, gaseous, biological or thermal irritants or contaminants, including, but not limited to, smoke, vapors, soot, silt, sedimentation, fumes, acids, alkalis, chemicals, hazardous substances, petroleum, hydrocarbons, waste materials, including medical, infectious and pathological waste, legionella, "mold", electromagnetic fields, "low-level radioactive waste" and "mixed waste" materials, at levels in excess of those naturally occurring. Waste includes materials to be recycled, reconditioned or reclaimed.
>
> However, for the purpose of this insurance pollutants does not include odor.

15. The Policy's Mold and Legionella Exclusion Endorsement states that (*see id.* at Mold and Legionella Exclusion Endorsement):

> "Pollutants" means any solid, liquid, gaseous, biological or thermal irritants or contaminants including, but not limited to, smoke, vapors, soot, sedimentation, fumes, acids, alkalis, chemicals, hazardous substances, petroleum hydrocarbons, waste materials, including medical, infectious and pathological waste, electromagnetic fields, and "low-level radioactive waste" and "mixed waste" materials at levels in excess of those naturally occurring. Waste includes materials to be recycled, reconditioned or reclaimed.

### The Outbreak

16. The Outbreak at the Site appears to have commenced in March of 2022.

17. On March 17, 2022, the Iowa Department of Agriculture and Land Stewardship ("IDALS") issued a quarantine order (the "IDALS Order," attached hereto as **Ex. B**), which mandated the temporary suspension of Rembrandt's operations.

18. Rembrandt claims that it was required to clean and disinfect its facilities in accordance with federal and state requirements, and that it ultimately euthanized its poultry flocks (comprised of approximately 5,347,511 hens).

19. Rembrandt claims that it also was required to dispose of all dead poultry and impacted eggs, and to clean and disinfect all contaminated equipment, structures, vehicles, and other contaminated areas and materials.

20. The IDALS Order defines "Avian Influenza" as an "infectious or contagious disease," citing Iowa Code § 163.2(5), which defines "infectious or contagious disease" to include "Avian Influenza."

21. The IDALS Order's definition of "infectious or contagious disease" includes "any other transmissible, transferable, or communicable disease," and states that Avian Influenza "can potentially infect people."

22. The IDALS Order contains several mandates that Rembrandt must implement in order to end the quarantine and resume operations, including (though not limited to):

   a. Proper cleaning and disinfection protocols to be carried out and verified by IDALS or the USDA:

   b. All infected or potentially infected biologic and organic materials on the Site to be been removed, destroyed, or sterilized;

   c. The fallowing of the premises for a period of time based on the survivability of the Avian Influenza pathogen;

   d. Environmental testing showing that viable avian influenza pathogen is no longer found on the Site; and/or

   e. Sentinel animals remaining negative via diagnostic testing after introduced to the Site after a set period of time.

23. The IDALS Order provides that "[f]ailure to comply with this Order may result in the imposition of civil penalties and injunctive relief pursuant to Iowa Code sections 163.61 and 163.62."

24. Rembrandt claims to have incurred (and/or that it will incur) significant costs in responding to the Outbreak, and it has sought insurance coverage for those costs under the Evanston Policy.

25. Evanston disputes that it has any obligation to provide Rembrandt with insurance coverage for the Outbreak under the Evanston Policy.

## COUNT I – NO "POLLUTION CONDITION"

26. Evanston reasserts and incorporates by reference (as if fully restated herein) Paragraphs 1 through 25 of this Complaint.

27. Evanston is under no obligation to provide Rembrandt with insurance coverage for the Outbreak, because it does not constitute, nor did it result from. or arise out of. a "pollution condition" as required to implicate coverage. (*See* ¶¶ 13 to 15 *supra*).

28. Upon information and belief, Rembrandt disputes the applicability of the defense set forth in Paragraph 27.

29. There exists between Evanston and Rembrandt an actual, immediate and justiciable dispute regarding whether Evanston owes a duty to provide Rembrandt with insurance coverage for the Outbreak.

30. Evanston therefore is entitled to have a declaration of its rights and a judicial interpretation of the rights and obligations of the parties under the Evanston Policy. There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

WHEREFORE, Evanston respectfully prays that this Court:

A. Enter a declaratory judgment holding that, under the Evanston Policy, Evanston is under no obligation to provide Rembrandt with insurance coverage for the Outbreak;

B. Awarding Evanston its costs in this action; and

C. Awarding Evanston such other and further relief as the Court deems just and proper.

## COUNT II – ADDITIONAL APPLICABLE DEFENSES BARRING COVERAGE

31. Evanston reasserts and incorporates by reference (as if fully restated herein) Paragraphs 1 through 30 of this Complaint.

32. Evanston has no duty to provide Rembrandt with insurance coverage for the Outbreak pursuant to the terms, conditions, provisions and exclusions of the Evanston Policy, including but not limited to as follows:

a. Coverage is barred to the extent the IDALS Order does not constitute a "claim" as required to implicate coverage (*see* Policy at p. 16 of Site Pollution and Environmental Coverage Form);

b. Coverage is barred to the extent the Communicable Disease Exclusion applies to preclude coverage (*see id.* at p. 7);

c. Coverage is barred to the extent the Capital Expenditures Exclusion applies to preclude coverage (*see id*);

d. Coverage is barred to the extent the Criminal Fines And Penalties Exclusion applies to preclude coverage (*see id.*);

e. Coverage is barred to the extent the Your Property – Damage Or Cleanup Costs Exclusion applies to preclude coverage (*see id.* at p. 10);

f. Coverage is barred to the extent any insured has failed to comply with or satisfy conditions or obligations to coverage (*see id.* at pp. 12-15);

g. Any obligation of Evanston under the Evanston Policy is subject to any self-insured retention, retained limit, deductible, applicable underlying limit and/or applicable limit of liability contained in the Evanston Policy, and Evanston reserves the right to require that all such retentions, deductibles, and/or limits be satisfied and exhausted (*see id.* at pp.11-12; *id.* at Supplemental Declarations; *id.* at p. 1 of Schedule of Covered Locations);

h. Coverage is limited under the Evanston Policy, because that Policy contains various limitations on coverage, including without limitation: (i) other insurance

provisions; (ii) anti-stacking provisions; (iii) each "pollution condition" limits; and (iv) each coverage aggregate limits (*see id.* at pp. 11, 13 of Site Pollution and Environmental Coverage Form; *id.* at p. 2 of Common Policy Conditions; *id.* at p. 1 of Schedule of Covered Locations);

      i.    Coverage is barred to the extent Rembrandt seeks coverage for liability arising out of the acts or omissions of any individual or organization other than those declared or described as a named insured or insured in the Evanston Policy (*see id.* p. 1 of Site Pollution and Environmental Coverage Form; *id.* at Common Policy Declarations; *id.* at Additional Named Insureds Endorsement; *id.* at Additional Insured – Covered Locations Endorsement);

      j.    Coverage is barred to the extent Rembrandt has failed to present Evanston with sufficient facts to demonstrate that it is entitled to coverage under the Evanston Policy; and

      k.    Evanston reserves the right to assert additional defenses which may be pertinent to the Outbreak and/or any Rembrandt's claim(s) for coverage once the precise nature of the claim(s) is/are ascertained through further discovery and investigation.

33.    Upon information and belief, Rembrandt disputes the applicability of the defenses set forth in Paragraph 32.

34.    There exists between Evanston and Rembrandt an actual, immediate and justiciable dispute regarding whether Evanston owes a duty to provide Rembrandt with insurance coverage for the Outbreak.

35.    Evanston therefore is entitled to have a declaration of its rights and a judicial interpretation of the rights and obligations of the parties under the Evanston Policy. There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

WHEREFORE, Evanston respectfully prays that this Court:

A. Enter a declaratory judgment holding that, under the Evanston Policy, Evanston is under no obligation to provide Rembrandt with insurance coverage for the Outbreak;

B. Awarding Evanston its costs in this action; and

C. Awarding Evanston such other and further relief as the Court deems just and proper.

EVANSTON INSURANCE COMPANY HEREBY DEMANDS A TRIAL BY JURY.

Dated: June 9, 2022                 Respectfully submitted,

By:   /s/ *Suzanne L. Jones*
Suzanne L. Jones (MN Bar # 389345)
GORDON REES SCULLY MANSUKHANI LLP
100 S. Fifth Street – Suite 1900
Minneapolis, Minnesota 55402
(612) 351-5969
sjones@grsm.com

Daniel E. Feinberg (*pro hac vice* to be filed)
GORDON REES SCULLY MANSUKHANI LLP
1 North Franklin Street – Suite 800
Chicago, Illinois 60606
(312) 565-1400
dfeinberg@grms.com

Steven Bitter (*pro hac vice* to be filed)
GORDON REES SCULLY MANSUKHANI LLP
101 W. Broadway – Suite 2000
San Diego, California 92101
(619) 696-6700
sbitter@grsm.com