UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| EVANSTON INSURANCE COMPANY, | Case No. 22-CV-1540 (PJS/DJF) |
| Plaintiff, | |
| v. | ORDER |
| REMBRANDT ENTERPRISES, INC., | |
| Defendant. | |

---

Jason R. Schulze, Paulette S. Sarp, and Paris B. Glazer, HINSHAW & CULBERTSON LLP, for plaintiff.

Scott W. Wilkinson, DAVIS & CERIANI PC; Judah Druck and Bryan R. Freeman, MASLON LLP, for defendant.

Plaintiff Evanston Insurance Company ("Evanston") brings this action seeking a declaration that an insurance policy that it issued to defendant Rembrandt Enterprises, Inc. ("Rembrandt") does not cover losses that Rembrandt incurred due to an outbreak of highly pathogenic avian influenza ("HPAI") at Rembrandt's facility in Rembrandt, Iowa.

This matter is before the Court on Evanston's motion for summary judgment and Rembrandt's cross-motion for partial summary judgment.  For the reasons explained below, Evanston's motion is granted, Rembrandt's motion is denied, and the Court declares that Evanston's policy does not cover the losses that Rembrandt incurred due to the outbreak.

## I.  BACKGROUND

### A.  *The Outbreak*

Rembrandt owns and operates an egg-production facility that includes 20 barns in which egg-laying chickens are housed and fed.  Pugleasa Aff. [ECF No. 63-1] ¶¶ 3–4.  On March 17, 2022, Rembrandt observed a significant increase in mortality in one of the barns, and testing confirmed that HPAI was the cause.  Pugleasa Aff. ¶¶ 6–7.  As a result, Rembrandt was required to quarantine and disinfect the facility and eventually destroy all of the birds.  Pugleasa Aff. ¶ 8; Glazer Decl. Ex. 9 (March 17, 2022 quarantine order from Iowa Department of Agriculture and Land Stewardship); Glazer Decl. Ex. 7 (commercial flock plan requiring Rembrandt to destroy the birds).  Rembrandt incurred significant losses from the HPAI outbreak.  Pugleasa Aff. ¶ 9 & Ex. A-1.

### B.  *Evanston Policy*

Evanston issued Site Pollution and Environmental Policy No. MKLV3ENV102165 to Rembrandt for the policy period November 1, 2020 to November 1, 2023.  Glazer Decl. Ex. 1 at MSJ006 ("Policy").  Generally speaking, the insuring agreements in the Policy provide coverage for losses that are caused by a "Pollution Condition."  Policy at MSJ021–024.

The Policy also includes an exclusion for "Communicable Disease."  As relevant to this case, the exclusion bars coverage for

> '[l]oss' due to the presence of a communicable disease, which means an illness, sickness, physical condition, or an interruption or disorder of bodily functions, systems, or organs that is transmissible by infection or contagion directly or indirectly through human contact or contact with human fluids, waste or similar agents.

Policy at MSJ026.

### C. Highly Pathogenic Avian Influenza

The United States Department of Agriculture ("USDA") describes HPAI as "extremely contagious and deadly to domestic poultry." Glazer Decl. Ex. 11.[1] According to USDA, HPAI spreads directly from bird to bird and can also spread indirectly by birds coming into contact with contaminated surfaces or materials. *Id.* USDA identifies humans as potential sources of infection, including by spreading the virus via their "clothing, shoes, or hands." *Id.*

The Iowa Department of Agriculture and Land Stewardship ("IDALS") agrees with USDA, explaining that avian influenza is spread both by direct contact with infected birds and "by indirect contact with fomites (contaminated equipment, vehicles, people, etc.)." Glazer Decl. Ex. 9 ¶ 27. Consistent with these authorities, Evanston offers expert evidence that the HPAI virus, including the specific HPAI strain associated with the March 2022 outbreak at Rembrandt's facility, is transmissible by contagion

---

[1] For purposes of their summary-judgment motions, the parties have stipulated to the admission of Exhibit 11, a USDA publication, to explain the nature and characteristics of HPAI. Glazer Decl. ¶ 13.

indirectly through human contact. Perez Aff. ¶¶ 6, 10–14 [ECF No. 58-12]; Glazer Decl. Ex. 13 at 1, 5–7. Rembrandt offers no evidence to the contrary.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### B. Choice of Law

Evanston's policy contains a choice-of-law clause providing that New York law governs the interpretation of the Policy. Policy at MSJ016. Despite this provision, Rembrandt contends that Minnesota law applies, pointing to the Policy's "Service of Suit" provision. Policy at MSJ014. Rembrandt has not briefed the choice-of-law issue, however, contending that the Court need not resolve it because, at least with respect to

the meaning of the Communicable Disease exclusion, there is no difference between New York and Minnesota law.

Because the Court finds that, even applying Minnesota law as Rembrandt requests, the Communicable Disease exclusion precludes coverage, the Court declines to resolve the choice-of-law issue. *See Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1089 (8th Cir. 2021) (declining to resolve choice-of-law issue because the plaintiff could not prevail even under his preferred state law).

### C. Coverage

The interpretation of an insurance policy is a question of law. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Donaldson Co.*, 926 F.3d 1014, 1020 (8th Cir. 2019). An insured bears the initial burden to show that a claim comes within the policy's coverage. *Westfield Ins. Co. v. Robinson Outdoors, Inc.*, 700 F.3d 1172, 1174 (8th Cir. 2012). The burden then shifts to the insurer to show that an exclusion applies. *Id.* Exclusions are narrowly construed. *Id.* That said, "clear and unambiguous language in a contract is given its ordinary meaning." *Id.* at 1175. "Language in an insurance policy is ambiguous if it is reasonably susceptible to more than one interpretation." *Wesser v. State Farm Fire & Cas. Co.*, 989 N.W.2d 294, 299 (Minn. 2023) (citation omitted).

Evanston argues that there is no coverage under the Policy for two reasons: (1) the HPAI outbreak did not involve loss caused by a "pollution condition," and

(2) the Communicable Disease exclusion precludes coverage.  The Court agrees with the latter argument and therefore need not address the former.

As noted, the Communicable Disease exclusion precludes coverage for

> '[l]oss' due to the presence of a communicable disease, which means an illness, sickness, physical condition, or an interruption or disorder of bodily functions, systems, or organs that is transmissible by infection or contagion directly or indirectly through human contact or contact with human fluids, waste or similar agents.

Policy at MSJ026.  Evanston offers undisputed evidence from USDA, IDALS, and an expert in avian virology that the HPAI virus is "transmissible by . . . contagion . . . indirectly through human contact."  As a result, the Communicable Disease exclusion bars coverage for losses caused by the March 2022 outbreak at Rembrandt's facility.

Rembrandt resists this conclusion, contending that the Communicable Disease exclusion is ambiguous because, under Evanston's interpretation, no losses caused by a communicable disease would ever be covered and the language following "communicable disease" would therefore be rendered irrelevant.  This argument "mistakenly equates breadth with ambiguity; just because contractual language is broad does not mean it is ambiguous."  *Latterell v. Progressive N. Ins. Co.*, 801 N.W.2d 917, 921 (Minn. 2011).  Moreover, the language following "communicable disease" still has meaning because it requires that the infectious agent be transmissible in a manner involving a human, thereby leaving open the possibility of coverage for losses caused

by infectious agents that cannot be transmitted in this manner. Even if Rembrandt is correct that no such infectious agent exists, the fact remains that, as discussed below, Rembrandt's alternative interpretation is unreasonable because it elides specific policy language.

Rembrandt next argues that the exclusion is ambiguous because it "may reasonably be interpreted as applying only when a human is infected with the disease-causing agent and passes the same on through either direct contact with the infected human or indirect contact with the human via his or her infected fluids, waste, etc." ECF No. 62 at 28. This interpretation reads "contagion" out of the exclusion, however. The exclusion is not limited to illnesses spread by infection; instead, it applies when an illness is transmissible by "infection *or* contagion." (Emphasis added.)

As Rembrandt itself argues—and as Evanston's expert confirms—"infection" means "the entrance and development of an *infectious agent* in a human or animal body." ECF No. 62 at 29; *see also* Perez Aff. ¶ 12 ("By 'infected,' I mean a human, animal or bird that is actively replicating and shedding virus through mucosal surfaces such as respiratory (such as the nose, mouth, lungs) and/or intestinal mucosa."). Because the policy language makes clear that "contagion" is an alternative to "infection," the two terms should not be interpreted to mean the same thing. *See Com. Bank v. W. Bend Mut. Ins. Co.*, 870 N.W.2d 770, 775 (Minn. 2015) ("We will not adopt a construction of an

insurance policy which entirely neutralizes one provision if the contract is susceptible of another construction which gives effect to all its provisions and is consistent with the general intent." (cleaned up)).  The only reasonable interpretation, therefore, is that "contagion" means the transmission of disease by a means *other* than from one infected being to another, such as by an uninfected human carrying the virus on her hands or shoes.

Rembrandt nevertheless argues that "the only way to get a virus or other illness **from** human contact or contact with human fluids, waste or similar agents is if the human or human waste is also infected with the same."  ECF No. 62 at 30.  But all of the evidence before the Court is to the contrary.  *See* Glazer Decl. Ex. 11 (USDA publication stating that the virus may be transmitted "by people who may have inadvertently picked the virus up on their . . . hands" and recommending various precautions, including disinfecting hands); *id.* Ex. 9 ¶ 27 (IDALS order noting that the virus may be spread "through indirect contact with fomites (contaminated equipment, vehicles, people, etc.)"); *id.* Ex. 13 at 5 (expert report opining that the virus may be indirectly transmitted by being "carried to susceptible hosts (chickens, turkeys) by humans").

Rembrandt next argues that the HPAI virus is not "transmissible" because the biosecurity measures at Rembrandt's facility were such that transmission at the facility was not possible.  This is a patently unreasonable reading of the exclusion.  The

language of the exclusion does not require that the virus have been *transmitted* in any particular way; it requires only that the virus be *transmissible* in the ways identified in the exclusion.  Whether a given virus is transmissible is a characteristic of the virus; the Policy is clearly not referring to any characteristic of the insured's facilities.  Indeed, the very reason why Rembrandt implements biosecurity measures is that the virus *is* transmissible.  One could imagine an exclusion that would bar coverage if an insured failed to implement adequate biosecurity measures, but the language of such an exclusion would be nothing like that of the Communicable Disease exclusion.

Relatedly, Rembrandt seems to argue that Evanston must prove that the outbreak at Rembrandt's facility was in fact caused by human contact, and Rembrandt raises the specter of a situation in which the human contact is so far back in the chain of transmission as to render the application of the exclusion ambiguous.  Again, however, that is not what the exclusion says.  It applies to losses caused by illnesses that *are transmissible* in certain ways; it is not limited to situations in which the illness was in fact *transmitted* in those ways.  Evanston therefore need not prove how HPAI was spread at Rembrandt's facility.  Nor is it relevant that, in a particular case, the actual human involvement in spreading the illness may have been minimal.

True, it is theoretically possible that there exists in the world some infectious agent that cannot be transmitted by any method involving a human *unless* the human's

involvement is extremely attenuated. This is not that case, however, and this hypothetical situation does not render the exclusion ambiguous. *See UnitedHealth Grp. Inc. v. Columbia Cas. Co.*, No. 05-CV-1289 (PJS/SRN), 2010 WL 317521, at *7 (D. Minn. Jan. 19, 2010) ("A party to a coverage action involving one set of facts will often try to argue that the policy's application to *another* set of facts would be ambiguous, and therefore the policy is ambiguous, and therefore the party should be able to introduce extrinsic evidence about the policy's meaning. But contract interpretation does not work that way.").

The Court therefore holds that the Communicable Disease exclusion bars coverage and that, as a result, the Policy does not cover any losses caused by the March 2022 outbreak at Rembrandt's facility.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion for summary judgment [ECF No. 54] is GRANTED.

2. The Court DECLARES that there is no insurance coverage under Site Pollution and Environmental Policy No. MKLV3ENV102165, issued by plaintiff to defendant, for losses caused by the March 2022 highly

pathogenic avian influenza outbreak at defendant's facility in Rembrandt, Iowa.

3. Defendant's motion for partial summary judgment [ECF No. 62] is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: February 27, 2024  s/Patrick J. Schiltz
Patrick J. Schiltz, Chief Judge
United States District Court